UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19 CR 277 |
| | ) | |
| CONCEPCION MALINEK | ) | Hon. Edmond E. Chang |

### **GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION TO REVOKE DETENTION ORDER[1]**

For nearly ten years the defendant was in the business of labor trafficking. The defendant recruited some of the world's most vulnerable people, enticed them to come to the United States with promises of a better life, and once here she proceeded to exploit the exploited. Charging her victims exorbitant debts that would take them a lifetime to pay off, the defendant kept her victims crammed into her single family home which had 33 individuals living inside at the time of her arrest. The defendant charged the victims for virtually everything they needed to survive which continued to increase their debts. To keep the victims silenced, the defendant threatened them with deportation and the loss of their children if they ever told anyone about their debt to her or their living arrangements inside her home.

Based on this appalling criminal conduct, the Magistrate Judge found the

---

[1] The defendant's initial motion (R. 47) was filed on May 14, 2020. On May 18, 2020, the defendant filed an additional motion (R. 50) for release seeking an emergency furlough to attend her mother's funeral on May 19, 2020. For the reasons stated in this response, the government submits that the motion filed today should also be denied.

1

defendant to be both a danger to the community and a risk of flight and ordered her detained pending trial. The defendant now seeks to have that order revoked based on the COVID-19 related illnesses of her parents. In the alternative, the defendant seeks a temporary release from custody to visit her dying father and attend the memorial service of her mother. For the reasons stated below, both requests should be denied.

## I. Background

Beginning in 2009 with her first victim, and continuing through her arrest in March 2019, the defendant engaged in the labor trafficking of at least 10 individuals, one of whom was just a 15 year old girl. Using her family and friend connections in her homeland of Guatemala, the defendant would contact those who were struggling and offer them the chance to come and live in the United States. The defendant would quote a small fee, typically around $5,000 for her services, and sold her victims the dream of a future much better than their present. Once her victims agreed to come to the United States, the defendant assisted in their illegal smuggling across the border and eventually to her residence in Cicero, Illinois.

Once the defendant had victims inside her residence, she would inform the victim of their debt, which was no longer the original quoted amount and ranged anywhere from $18,000-$42,000. The defendant assisted the victims in obtaining fraudulent identification documents and in obtaining work at a sandwich assembly factory. All of the victims resided in the defendant's residence, most crammed into bunkbeds in the basement, for which they had to pay rent (in addition to their other

debts). On the day of the defendant's arrest, there were 33 individuals living in the defendant's single family home in Cicero, 22 of which resided in the basement.

The defendant drove her victims to work every day and picked them up at the end of the shift. The defendant charged them for transportation and added it to their debt. On payday, the defendant required that they give her almost the entirety of their checks. The defendant threatened them: She told them that they were to never tell anyone about the debt they owed her or that they lived in her residence, and that, if they ever mentioned either of these things, she would have them deported, she would keep their children, and they would never see their children again. The defendant's threats worked by keeping this vulnerable section of society quiet because they were too afraid to contact law enforcement despite the defendant's abuse and exploitation.

The defendant is charged by indictment with ten counts of labor trafficking, in violation of Title 18, United States Code, Section 1589, and four counts of possession of fraudulent identity documents in violation of Title 18, United States Code, Section 1546(a).

In determining the defendant to be both a danger to the community and a risk of flight, the Magistrate Judge found "the government has shown by clear and convincing evidence that there is no condition or set of conditions that will reasonably assure the safety of the community and it has shown by a preponderance of evidence that there is no condition or set of conditions that will reasonably assure the

defendant's appearance at trial." The only new grounds in the defendant's motion not raised before the Magistrate Judge is the death of her mother and the illness of her father. While these events are certainly tragic, they do nothing to change the defendant's danger to the community, especially to the illegal immigrant community which she targeted as part of her criminal activity, nor her risk of flight while she awaits trial.

The defendant is facing a maximum sentence of 20 years' imprisonment per count for each of the ten labor trafficking counts, and 10 years' imprisonment per count for each of the four counts of document fraud, thus essentially exposing her to a life sentence. The government anticipates the defendant's guideline range to be 87-108 months' imprisonment without acceptance of responsibility.

## I. The Magistrate Judge's Detention Order Should Be Affirmed.

The defendant's motion raises the same arguments previously rejected by the Magistrate Judge, and only offers her parents' recent illness as a new factor for this court to consider. The illness of the defendant's parents, while tragic, has no bearing on the danger to the community she presents or her risk of flight. For the reasons stated below the defendant remains a danger to the community and a risk of flight and should continue to be detained pending trial.

### 1. There Is A Statutory Presumption For Detention In This Case

Because the defendant is charged with ten counts of labor trafficking, in violation of Title 18, United States Code, Section 1589, which is an offense under

4

Chapter 77 of Title 18 for which a maximum term of imprisonment of 20 years or more is prescribed "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(D). While this presumption is subject to rebuttal by the defendant, the defendant offers nothing in her motion to rebut this presumption. Additionally, every statutory factor listed under 18 U.S.C. §3142 weighs in favor of the defendant's continued detention.

    **2.**    **The Nature and Circumstances of the Offense Charged.**

The first factor Congress directs the court to examine is the nature and circumstances of the offense charged, "including whether the offense is a crime of violence . . . or involves a minor victim." 18 U.S.C. §§ 3142((g)(1). Labor trafficking is a crime of violence and the defendant's trafficking involved a minor, namely Victim 1, who was just 15 years old when the defendant trafficked her.

The nature and circumstances of the defendant's offense best demonstrates her danger to the community. By targeting poor and illegal aliens from Guatemala, the defendant chose victims she knew would be too afraid to contact law enforcement for help while she continued to victimize them on a daily basis. The defendant's victims were being exploited every day and believed they could not seek help from anyone for risk of being deported and losing their children. These victims kept their heads down and continued to work in the factory in order to turn over almost their entire paycheck to the defendant. By targeting victims who were too afraid to seek

5

help, the defendant was able to continue her criminal behavior for over 10 years with almost complete silence by the victims.

The defendant's absolute power over this immigrant community is what makes her so dangerous and demonstrates why she needs to remain incarcerated pending trial. One example of this absolute power the defendant yields over the victims and the danger she presents to the community is best viewed through a telling example of her conduct before her arrest. Victims 8 and 9 of the indictment were typical victims of the defendant. They owed her an exorbitant debt and both worked at the sandwich factory to be able to continue paying the defendant. Victims 8 and 9 had a 2 year old child who remained at the defendant's home while they worked. One day while at the factory, Victim 8 received a call that there had been an accident involving her son. Victim 8 arrived at the defendant's residence and found her 2 year old child in extreme pain with severe burns covering his entire scalp. According to the defendant, the two year old child pulled a mug of hot tea off a counter and it scalded his head. Victims 8 and 9 pleaded with the defendant to let them bring their child to the hospital. The defendant refused, threatening Victims 8 and 9 with deportation if they attempted to seek medical help for their child. The defendant provided them with tomato sauce to apply to the child's wounds. Victims 8 and 9 had to watch for days as their son suffered through this extreme pain without the assistance of any medical treatment.

What this one example demonstrates is not only how serious this offense is,

but how dangerous the defendant is and why if she is released it makes her no less dangerous to her victims because they are members of a community who are extremely reluctant to reach out to law enforcement for help, even when confronted with their own child in extreme pain. If the defendant were to be released there would be no way to ensure that she did not continue her exploitive behavior.

Another example of the seriousness of this offense is the defendant's trafficking of Victim 1. Victim 1 is a 15 year old girl who should have been going to high school and instead was driven to a factory every day by the defendant. When the defendant found out Victim 1 was just 15, she took her photo and obtained her fake identity documents so she could send her to work at the factory with her parents. The defendant convinced Victim 1 that is she went to the factory and worked, her parents would be able to pay off their debt to the defendant quicker. Instead of being attending high school, Victim 1 spent her time in a refrigerated factory making sandwiches so that they defendant could profit.

### 3. The Weight of the Evidence Against The Defendant Is Strong.

The second statutory factor, "the weight of the evidence against the person" also weighs in favor of detention. 18 U.S.C. §§ 3142(g)(2). In addition to the Magistrate Judge and the Grand Jury already making probable cause findings against the defendant, the evidence is overwhelming of the defendant's commission of these crimes.

First, all ten of the victims tell a similar version of events about the defendant's

exploitative behavior and repeated threats that they had to continue working to pay off the debts or they would be deported or have their children taken.

Second, during the search of the defendant's residence, law enforcement recovered three ledgers from the defendant's bedroom. The ledgers corroborate the statements of the victims and detail their total debts, which ranged from $18,000 to $42,000. Three of the victims' entries had specific statements that they signed saying they could not leave the residence until half or all of the debt was paid off.

Third, law enforcement recovered multiple fake identity documents the victims all stated the defendant obtained for them in order for them to work and repay their debt to her. Photographs used for these fake identity documents were recovered from the defendant's personal cell phone.

Fourth, witnesses from the factory corroborate that the defendant brought the victims to apply for jobs and assisted in their filling out applications. They also confirmed that the defendant would communicate about work schedules with the company on behalf of the victims.

Fifth, on the day of the defendant's arrest law found 33 individuals living in the residence at the time of the search. The majority lived in the basement which was packed with bunkbeds and mattresses on the floor. There was mold on the walls and some of the children were infected with lice.

Finally, the defendant was interviewed by law enforcement following her arrest and, after being advised of her *Miranda* rights, admitted to much of this

criminal conduct. The defendant admitted she obtained the fraudulent identification documents for the victims; she admitted she told some victims they could not leave the residence until they paid the debt, and she admitted knowing that Victim 1 was only 15 years old and that she obtained Victim 1's fake documents so Victim 1 could work.

### 4. Defendant's History And Characteristics

The defendant's history and characteristics also weigh in favor of detention both as a danger and a risk of flight. Most notably, the defendant remains a citizen of Guatemala, owns a hotel in Guatemala, and has multiple family members residing in Guatemala. All of these factors make the defendant a flight risk. Moreover, the defendant both refused to answer certain questions by pretrial services and failed to give pretrial services a complete answer to many questions she did answer. The defendant refused to answer pretrial' s questions regarding familial and residential information so there is no way to assess what, if any, ties the defendant has here in the United States. The defendant also failed to inform pretrial services of the full extent of her international travel. The defendant only mentioned one recent trip to Guatemala but travel records show she had multiple trips to and from Guatemala. Significantly, the defendant also failed to inform pretrial services of her ownership of a hotel in Guatemala. Based on these material omissions, the defendant does not appear to be someone who could be trusted to comply with any conditions of release set by this court.

**5.     The Defendant Poses a Danger To the Community If Released.**

As stated above, the defendant poses a risk to both the victims in this case, as well as other potential victims who are members of the illegal alien community. The ability to protect this population from the defendant's exploitative crimes is limited because of the fear of law enforcement by members of this community. The defendant could very easily continue to exploit illegal aliens without the victims coming forward to inform law enforcement or the Court.

Additionally, even while the defendant has been incarcerated, members of the victims' families have been contacted by individuals associated with the defendant. In October 2019, the defendant's brother who resides in Guatemala approached the sister of one of the victims in this case and told her that the defendant's family would find out at the trial who spoke both for and against the defendant. The victim's sister was scared and crying and notified her sister immediately to report this encounter.[2]

In June 2019, the defendant's niece, who still resides with the defendant's husband at the defendant's home, reached out to another victim in this case and attempted to continue to collect on the "debt" the defendant claimed the victim owed. These examples demonstrate the risk to the victims if the defendant were released.

**6.     The Defendant's Proposed Conditions Are Insufficient.**

The United States submits that the defendant has failed to rebut the

---

2 The government reported this contact to defense counsel and informed him that any attempts at witness intimidation would not be tolerated.

10

presumption of detention, and that the factors established by Congress in 18 U.S.C. §3142 all demand that the defendant be detained pending trial as both a risk of flight and a danger to the community.

The defendant's proposal that she reside with her husband is insufficient to alleviate any of the United States' concerns. First, her husband resided in the house with the defendant for the entire duration of this crime. Despite being a TSA agent the defendant never once reported that he had 33 undocumented immigrants living inside his single family residence. Either the defendant's spouse was complicit in this crime or he somehow (inexplicably) failed to detect the defendant's criminal wrongdoing. Either way, it makes him an unsuitable third party custodian.

Second, by not providing pretrial services with a true and accurate picture of her financial holdings, the offering of a secured bond is meaningless. The defendant's conditions have her returning to the exact same location, with the exact same people, that she was with at when she committed this crime. Such conditions fall woefully short of being able to assure the safety of the community or the defendant's presence at trial.

## II. The Defendant's Request for Temporary Release Should Be Denied.

The defendant requests in the alternative that she be temporarily released in order to visit her dying father and attend a memorial service for her mother. The government sympathizes with the defendant's situation but cannot support her

temporary release for multiple reasons.[3] First, based on the ongoing COVID-19 pandemic, the Bureau of Prisons is quarantining any prisoners who are set to be released into the general public for a 14 day period in order to ensure the released prisoner does not become an unknown carrier of the disease back into their community. Thus, any temporary release would at least have to be 14 days after any order of this Court to temporarily release the defendant which would likely make the request moot.

Second, the defendant's motion states that both her mother and father contracted the COVID-19 virus. The defendant's parents were living at the defendant's residence, along with the defendant's husband, as well as other family members who would likely attend the service. Having the defendant attend a service for her mother where it is likely others who have been exposed to the COVID-19 virus are in attendance would only increase the defendant's chances of contracting the virus. Moreover, assuming her father is still in the hospital receiving treatment for COVID-19, it is highly unlikely the hospital would allow the defendant to visit. Even if she were allowed to visit, such an interaction while on temporary release from federal prison would be endangering all of the other inmates and prison staff upon the defendant's return, even after a 14 day quarantine period upon her return.

As of now, Livingston County Jail where the defendant is housed currently

---

3 The government would support either allowing the defendant to attend the memorial service via video conference.

has no confirmed cases of COVID-19. Allowing the defendant's temporary release into a circle of individuals who unfortunately have contracted this virus is simply not tenable.

## CONCLUSION

Based on the foregoing, the United States respectfully requests this Court affirm the Magistrate Judge's detention order and deny the defendant's request for temporary release to attend her mother's memorial service and visit her ill father.

        Respectfully submitted,
        JOHN R. LAUSCH, JR
        United States Attorney

BY:   /s Christopher V. Parente
        Christopher V. Parente
        Assistant United States Attorneys
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 886-7629