IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs | ) Case No. 19 CR 277 |
| | ) |
| **CONCEPCION MALINEK,** | ) Judge Edmund Chang |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
HER MOTION TO REVOKE DETENTION**

**NOW COMES** the defendant, **CONCEPCION MALINEK,** by and through her attorney, **ROBERT L. RASCIA,** and submits her Reply Brief in Support of Her Motion to Revoke Detention. In support thereof the defendant states as follows:

**I.  *DE NOVO* REVIEW OF ORDER OF DETENTION**

On March 29, 2019, more than a year ago, a detention hearing was held in this cause. At the hearing the Government asserted that the defendant was a flight risk and a danger to the community. The Court agreed with these assertions and ordered the defendant to be detained. The defendant has now filed a motion to revoke this detention order under 18 U.S.C. §3145. The defendant's motion requests a *de novo* review, but also cites new circumstances which were not presented to Magistrate Judge Jeffery Cole during the initial hearing. See United States v. Torres, 929 F.2d 291, 292 (7th Cir. 1991), providing that the District Court is permitted to entertain *de novo* review of the original detention order in this context.

## II.     THE DEFENDANT IS NOT A FLIGHT RISK

The defendant is a naturalized United States Citizen who has chosen to reside in the United States since 2005. She is married to a United States Citizen, who is an employee of the United States Federal Government, and has financially supported her since she suffered a recent leg injury. Ms. Malinek is also a homeowner who has resided in her marital home with her husband in the Northern District of Illinois since 2008. In light of these substantial ties to this jurisdiction, the sole meaningful basis for determining that the defendant is a flight risk is the fact that she is a native of Guatemala, and that some of her close family members still reside there.[1] The defendant has clearly demonstrated her intention to reside here within the Northern District of Illinois. She has purchased a marital residence here, and she has offered to pledge her equity in that residence as security for her release. The mere opportunity to flee is not enough to justify detention. Chen, 820 F. Supp. at 1208. The defendant has demonstrated that she has long term family and financial plans to reside here in the United States. This past behavior demonstrates that Ms. Malinek has no desire to leave the jurisdiction, and even if she was tempted to flee (which she is not) then her offer to pledge her marital residence as security for her release would be sufficient to dissuade her from acting on that temptation. Ms. Malinek is fully aware that her home would be subject to forfeiture to the government if she fails to appear in court or otherwise comply with the conditions of release. Her strong incentive to maintain this financial asset will motivate her to appear in court when she is directed and comply with the conditions of her bond. Conversely, the fear of losing this valuable asset would discourage her from ignoring her obligations to this Court.

---

[1] It is noteworthy that defendant's purported ties to Guatemala are substantially diminished now that her mother has died and her father is a hospital patient in the United States. As a result of this misfortune Ms. Malinek now has fewer close family members in Guatemala than she did at the time of her original detention hearing.

### III.   THE DEFENDANT IS NOT A DANGER TO THE COMMUNITY

The defendant is 50 years old and she has no criminal history of prior involvement with law enforcement. This means that the underlying criminal conduct alleged in this case is the only basis to infer that she is a danger to the community. The defendant acknowledges that she is charged with a serious offense, but the charges at this stage are merely an accusation. 18 U.S.C. §3142(j). The defendant has pled not guilty and she is preparing to proceed to trial.

The nature and seriousness of the charged offense is only one factor to be considered under the Bail Reform Act. 18 U.S.C. §3142(a)(1). In every case the weight of the evidence against a defendant will be the "least important of the various factors" United States v. Hammond, 204 F. Supp. 2d 1157, 1165 (E.D. Wis. 2002), citing United States v. Chen, 820 F. Supp. 1205 (N.D. Cal. 1992) (quoting United States v. Motamedi, 767 F. 2d 1403, 1408 (9th Cir. 1985). This is particularly true here in this case, where it is especially precarious to infer dangerousness from the underlying criminal allegations against Ms. Malinek, because the government has advanced a novel legal theory that is dependent upon witnesses with an obvious bias and motive to lie, which implicates legitimate doubts about her guilt at trial.

The defendant is charged with coercing labor from consenting adults (with the exception of one minor teenager who was supervised by her father and was very near legal working-age). Each of them voluntarily agreed to immigrate to the United States and reside at the defendant's home with the expectation that they would financially compensate her for the expenses that she incurred in arranging for their travel and providing them with room and board. These payments owed to the defendant were always calculated in direct proportion to the benefits that were received by each houseguest i.e. the length of their stay and the cost of the basic necessities and other amenities that they received. At trial the defendant will certainly dispute the assertion that it is illegal to require a houseguest to financially contribute toward

their own room and board. The defendant did not use any violence, physical force, or threats of violence or force to compel anyone to work for her, or to pay their outstanding debts to her, or to continue residing at her home. [2] Each of the defendant's houseguests voluntarily agreed to enter into this arrangement and they voluntarily remained at her home without anyone preventing them from leaving. There has been no indication that any of the defendant's houseguests were especially vulnerable to exploitation by way of cognitive deficits or physical disabilities.

Rather, the Government will instead attempt to show that the defendant used her capacity as an immigration sponsor to exploit her victims' fears of a legitimate legal process, the possibility of deportation from the United States back to Guatemala, in order to coerce them into working for her.[3] This allegation will inevitably straddle a very fine line between prohibited criminal activity and perfectly lawful conduct (i.e. warning a houseguest about the potential ramifications of absconding from her home while entrusted to her supervision). Thus it will require a highly fact-intensive inquiry at trial. In order to substantiate this allegation the Government will rely upon witnesses who undoubtedly have clear bias and motive to falsely implicate the defendant in furtherance of their own self-interest, by either fabricating or exaggerating her conduct. Specifically, the witnesses have already received

---

[2] The government has suggested that relatives of the defendant in Guatemala have expressed displeasure with the 'victims' for testifying against Ms. Malinek. Even if this were true, and even if such statements could fairly be interpreted as a threat, they cannot be fairly attributed to the defendant. As an incarcerated detainee in the United States she does not have the ability to arrange for the harassment and intimidation of witnesses in Guatemala without being detected, nor does she have the ability to discourage or prevent such harassment if it is indeed occurring.

[3] The government alleges that the defendant leveraged her supervisory role as an immigration sponsor for the 'victims' in order to coerce them into engaging in labor for her benefit. Even if this allegation were true (which it is not) then it is not reasonable to suggest that Ms. Malinek would have the capability to resume this criminal behavior again if she is granted pretrial release, because there is no potential likelihood that the immigration authorities would permit her to serve as an immigration sponsor again in the future.

immigration benefits from the government in exchange for their cooperation and testimony, and they expect to continue receiving these benefits in the future if they help to obtain a criminal conviction against her in this case.

Moreover, even if she was a danger to the community, a defendant cannot be detained as dangerous under §3142(e) unless a finding is made that no release conditions "will reasonably assure... the safety of the community..." <u>Dominguez</u>, 783 F. 2d at 706-707 (internal quotation omitted). The statute requires the Government to prove by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community. <u>United States v. Chimurenga</u>, 760 F. 2d 400 (2nd Cir. 1985); <u>United States v. Portes</u>, 786 F. 2d 758 (7th Cir. 1985). The defendant and her husband have offered to pledge their home as security for the defendant's release. This will be more than sufficient to assure that the defendant will not engage in any conduct that might jeopardize her interest in the property.

### IV. NEW CIRCUMSTANCES JUSTIFY PRETRIAL RELEASE

The new and unexpected outbreak of the COVID-19 global pandemic, which could not have been anticipated by the defendant or her counsel at the time that the defendant was previously ordered to be detained, has now caused significant difficulty for Ms. Malinek. She is experiencing significant anxiety for her health because she has several risk factors which would make her susceptible to complications from COVID-19 (most notably she is overweight and she suffers from diabetes). This anxiety is exacerbated because Ms. Malinek is not able to properly socially distance herself from her fellow inmates.

Ms. Malinek is also experiencing tremendous mental-anguish as a result of the recent death of her mother from COVID-19, as well as the corresponding hospitalization and drastic medical decline of her father ( also due to COVID-19 as well). If Ms. Malinek is granted pretrial release, it would allow her to attend the upcoming memorial service that is scheduled

for her mother on May 27, 2020, and it would also allow her to attend any funeral or memorial services for her father that may become necessary in the future if he does not survive his current illness.

Pretrial release is also justified to allow for the defendant to better prepare for trial with her attorney. The COVID-19 pandemic has made attorney-client consultations more difficult than they were at the time that the original detention order was issued. The defendant is housed at the Livingston County Jail and she requires the assistance of a Spanish-language interpreter. The defendant and her counsel are now beginning the difficult task of finalizing her strategy and preparations for trial. It would help to facilitate these preparations if Ms. Malinek is permitted to meet with her attorney at his office.

## V.     TEMPORARY FURLOUGH OR ESCORTED TRIP

As an alternative prayer for relief, if Ms. Malinek is not granted pretrial release, then she requests a temporary furlough or escorted trip to attend the memorial service for her mother, and any funeral or memorial service which may ultimately become necessary for her father, pursuant to 28 CFR §551.109(a)&(b).

## VI.    CONCLUSION

For all of the reasons mentioned herein, the defendant asserts that pretrial release is appropriate. The ultimate standard for the Court remains one of "reasonable assurance" that the defendant will appear for trial and will not endanger the community. Reasonable assurance, however, should not be mistaken for absolute assurance. Detention cannot be ordered merely because there are no conditions that would guarantee the defendant's appearance at trial. Portes, 786 F. 2d at 764 n.7 (7th Cir. 1985) ("The conditions need not guarantee appearance but must reasonably assure appearance.") (citing United States v. Orta, 760 F.2d 887, 891-892 (8th Cir. 1985).

The defendant and her husband have offered to pledge their marital home as security for her release. The possible loss of this property constitutes substantial assurance that the defendant will not flee and she will comply with her bond. The additional proposed conditions, of home confinement and location monitoring, are available and sufficient to alleviate any further concerns.

**WHEREFORE** the defendant respectfully requests for this Honorable Court to grant her pretrial release during the remaining pendency of her case, or, as an alternative prayer for relief, that she be granted a temporary furlough or escorted trip to attend the memorial service for her mother and any funeral or memorial service that may ultimately become necessary for her father.

Respectfully Submitted,

S/Robert L. Rascia/May 20, 2020
**ROBERT L. RASCIA, ARDC No. 6184470**
Attorney for the Defendant
The Law Offices of
Robert Louis Rascia, Ltd
650 N. Dearborn/Suite 700
Chicago, IL 60654
312-994-9100 Office
312-994-9105 Fax
rrascia@rasciadefense.com; Email

## **CERTIFICATE OF SERVICE**

I, ROBERT RASCIA, deposes and states that, on this 20th day of May, 2020, I have served notice of the foregoing to Assistant United States Attorney Christopher Parente, via ELECTRONIC FILING.

<u>s/Robert L. Rascia/May 20, 2020</u>
**ROBERT L. RASCIA, ARDC No. 6184470**
Attorney for the Defendant

The Law Offices of
Robert Louis Rascia, Ltd
650 N. Dearborn/Suite 700
Chicago, IL 60654
312-994-9100 Office
312-994-9105 Fax
rrascia@rasciadefense.com; Email