**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | No. 19 CR 277 |
| | ) | |
| **CONCEPCION MALINEK,** | ) | Hon. Edmond E. Chang |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S SENTENCING POSITION PAPER

**NOW COMES** the defendant, **CONCEPCION MALINEK**, by and through her attorney, **ROBERT L. RASCIA**, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and United States v. Booker, 543 U.S. 125 S. Ct. 738 (2005), and respectfully submits her sentencing position paper.

#### I. Guideline Calculation

The presentence investigation report at page 11, paragraph 43, states that the total offense level is 28. The defendant asserts that the total offense level is 24, as she opposes the two level increase applied pursuant to guideline §2H4.1(b)(1)(B)(page 10 paragraph 33) and the two level increase pursuant to guideline §3A1.1(b)(1)(page 10 paragraph 36). The details of those objections will follow below.

The defendant's criminal history category is I. The combination of a total offense level of 28 and a criminal history category I results in an advisory guideline range of 78 to 97 months. The combination of a total offense level of 24 combined with a criminal history category of I results in an advisory guideline sentencing range of 51 to 63 months. The defendant asserts, for the reasons set forth herein, that a below guideline sentence is appropriate.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

## II.     Nature of the Case

Concepcion Malinek was arrested on March 26, 2019, after a criminal complaint was filed alleging a violation of Title 18, United States Code, Section §1589(a)(2) and (a)(4). Malinek housed a number of Guatemalan immigrants at her residence in Cicero, Illinois, most of whom lived in the basement of the residence. The ten victims identified in the superseding indictment resided with the defendant in Cicero at varying times. Each of the victims sought out the defendant for assistance upon their planned arrival in the United States. The victims had extended family relationships to the defendant and sought her approval to "receive" them once they arrived in the United States.

The victims would travel from Guatemala to the United States through Mexico. Upon arrival in the United States the victims would be detained in ICE custody, pending the express consent of the defendant to allow them to reside at her residence and to arrange air transportation to Chicago, at the defendant's expense. The travel expenses to Cicero were advanced by the defendant based on an agreement with the various victims that they would make payments in the future. Upon arrival at the defendant's Cicero residence the defendant would purchase, for the benefit of the victims, again at her own expense, clothing, bedding, toiletries, and a cellphone.

The victims were aware that the defendant's assistance involved upfront payment of expenses by the defendant. The victims and the defendant agreed to the amount due for the prepaid expenses, as well as rent, clothing, food, cellphone, and transportation. The defendant has acknowledged in her plea declaration that, as the victims complained to law enforcement, she increased the amount owed to her beyond what was originally agreed. The defendant acknowledges that, while she agreed to assist each of the victims at their own request, she immediately changed the terms of the financial agreement for her benefit exclusively.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

The defendant has admitted in her plea declaration as well, that the more money the she paid out, the more demanding she became in seeking repayment. The various victims stayed at the defendant's Cicero residence for varying lengths of time, the longest being Victim 10. She arrived at the defendant's home in 2009, and left in 2013 to move in with her boyfriend. In addition to the travel and living expenses, the defendant also lent $4,000 dollars to Victim 10 to use for her home repair on her home in Guatemala.

In regards to the count of conviction the defendant agreed to assist Victim 10, a citizen of Guatemala, to enter the United States for an agreed upon fee of $8,000 dollars. Upon arrival in the United States Victim 10 took up residing at the Defendant's Cicero home. Victim 10 was employed initially in a job working with the defendant, while living at her residence. During this time the Defendant demanded payment from Victim 10 for the expenses she already paid and the money that was loaned. The Defendant received a substantial portion of Victim 10's earnings to apply toward the debt. When payment was not forthcoming from Victim 10 the defendant would threaten to contact immigration authorities to seek Victim 10's deportation.

The defendant had allowed Victim 10's boyfriend to live at her residence as well, for additional payment. The defendant was told by Victim 10 and her boyfriend that they were moving to their own apartment. The defendant continued to demand payment from Victim 10 afterwards. The defendant acknowledged in her plea declaration that an additional 9 other victims resided at the defendant's home for varying lengths of time, all for a significantly shorter duration of time than Victim 10. Common to the experience of each of these victims is that they sought out the defendant for her assistance, and had their travel expenses and necessities paid for by the defendant.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

The defendant assisted these additional victims with finding employment and, in some instances, obtaining false identification documents so they could obtain employment. From this employment the defendant obtained and demanded payment of the debt that the defendant insisted was owed to her for rent, travel expenses, transportation and food that the defendant provided, in an aggressive manner.

Immigration authorities were aware of the victims' presence at the defendant's residence. Regular visits were made to the Cicero residence by authorities to verify their residency. None of the victims voiced a complaint during these visits.

The investigation leading to the defendant's arrest began with a victim complaining to a co-worker about the defendant and the conditions at the Cicero residence. The co-worker contacted law enforcement and the defendant was arrested shortly thereafter.

Two of the victims were parents to a two-year-old child that lived with the couple at the defendant's residence. Both were employed at a factory and left the child in the care of the defendant's niece at the defendant's residence while they were at work. The child sustained an injury caused by hot water spilling from a coffee cup that the child pulled at, which splashed the hot water onto the child's scalp area.

The parents learned of the accident through a phone call. Both parents later claimed that the defendant forbid them from getting outside emergency medical care. The defendant acknowledges that the child was accidentally injured while in her niece's care at her residence. The defendant denies that she, in any fashion, prohibited the child's parents from getting outside medical care for the child. A further discussion of this issue is detailed below as part of the defendant's objections to the guideline calculation.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

The defendant acknowledged through her guilty plea that her aggressive and threatening conduct employed to secure payment to her from these victims was unlawful. In addition to acknowledging guilt the defendant stands prepared to pay the victims restitution.

### III. Objection to Enhancement under §2H4.1(b)(1)(B) (Injury to Victim)

The presentence investigation report recommends a two level increase in the advisory sentencing guideline range pursuant to §2H4.1(b)(1)(B) for injury to a victim of the offense (page 10, paragraph 33). The defendant opposes this enhancement.

§2H4.1(b)(1)(B) provides that a two level increase should be applied "*if any victim sustained serious bodily injury.*" The presentence report urges that this enhancement should be applied because a child of one of the defendant's victims suffered an accidental burn injury. The text and comments of §2H4.1(b)(1)(B) are silent about which categories of persons can qualify as victims for the purposes of this enhancement i.e. whether the definition of a victim should extend beyond those persons who were actually forced to perform the forced labor. In the absence of any express guidance or authority to the contrary, the defendant urges that the basic principles of lenity require that this statutory ambiguity should be interpreted narrowly in her favor. Therefore, for the purposes of applying the enhancement in the context of a forced labor offense, only persons who are actually subjected to forced labor should be regarded as victims.

It goes without saying that the injured child was not forced to perform labor for the financial benefit of the defendant. It was not the defendant herself who accidentally caused the injury to the child (it was her niece), and no one has asserted that the injury was intentionally inflicted (i.e. in an attempt to punish or intimidate the child's parents).

Likewise, there is no reason to believe that the defendant preferred or sought out immigrant victims who were accompanied by their children when they immigrated to the

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

United States. The defendant did not prompt or instruct any of the victims to bring their children to the United States, and the decision of the child's parents to bring their child here to this country was completely ancillary and unrelated to the defendant's criminal scheme. Other than this isolated incident there is no other evidence to suggest that this particular child was subjected to substandard childcare on a regular basis or otherwise suffered child abuse or neglect perpetrated by the defendant. Importantly, there has been no showing that the quality of childcare provided to the children at the defendant's house was worse than it would have been in their home country.

### IV. Objection to Enhancement under §3A1.1(b)(1) (Vulnerable Victim)

The presentence investigation report asserts that a two level increase in the advisory sentencing guideline range is applicable pursuant to §3A1.1(b)(1) for offenses targeting vulnerable victims (page 10, paragraph 36). The defendant opposes this enhancement.

§3A1.1(b)(1) provides that a two level increase should be applied "*if the defendant knew or should have known that a victim of the offense was a vulnerable victim.*" Application of this enhancement would necessarily require the Court to rely on the generalized immigrant status of the defendant's victims (asylum seekers) as the basis for characterizing them as vulnerable victims. Indeed, the presentence investigation report argues that the reason why the victims should be deemed to be especially vulnerable was because they were "impoverished and seeking any means to get to the United States for a better lifestyle. Once in the United States illegally, the defendant knew they would be afraid to report the defendant's conduct for fear of being identified by immigration officials and subsequently deported." (Page 10, Paragraph 36).

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

-6-

It is improper to rely upon the general immigration status of these asylum seekers to justify a vulnerable victim enhancement in this case, because their vulnerable immigration status has already been taken into account to satisfy the required element of coercion that is inherent in the underlying offense of conviction (forced labor).

"A condition that occurs as a necessary prerequisite to the commission of a crime cannot constitute an enhancing factor under §3A1.1. The vulnerability that triggers §3A1.1 must be an 'unusual' vulnerability which is present in only some victims of that type of crime. Otherwise, the defendant's choice of likely victim does not show the extra measure of criminal depravity which §3A1.1 intends to more severely punish." United States v. Moree, 897 F. 2d 1329, 1335 (5th Cir. 1990).

"The Guidelines represent Congress's determination, through the Sentencing Commission, of how much punishment a particular crime deserves, taking into account the inherent nature of the type of offense […] Although the court may have been correct in noting the *inherent* vulnerability of smuggled aliens, we assume that such a characteristic was adequately taken into account in establishing the base offense level […]" United States v. Medina-Argueta, 454 F. 3d 479, 483 (5th Cir. 2006) quoting United States v. Angeles-Mendoza, 407 F.3d 742, 747-748 (5th Cir. 2005) (Both finding that it was improper to apply the vulnerable victim enhancement based on victims' immigration status, because this vulnerable trait was already taken into account in the underlying offense of conviction -- alien smuggling). Id.

The defendant has been charged and convicted of committing forced labor based upon the theory that she criminally exploited her victims' fears of deportation to coerce them into turning over their earnings in payment for unfairly exorbitant debts that they owed her. Her decision to exploit the vulnerability of the immigrant victims (their fear of deportation)

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

-7-

has already been relied upon to satisfy one of the elements of the offense. [1]

Even if the victims' vulnerable immigration status had not already been taken into account in the offense of conviction, then it would still be improper to apply the vulnerable victim enhancement based solely upon generalized notions about the immigrant status of a group of victims. It is not adequate to argue that economic refugees and asylum seekers are generally vulnerable to criminal exploitation because they come from desperate circumstances and are fearful of deportation. These kinds of blanket characterizations of immigrant groups as vulnerable are unpersuasive for purposes of applying §3A1.1(b)(1) because they are based solely upon mere generalized assumptions. See United States v. Angeles-Mendoza, 407 F.3d 742, 747-748, (5th Dist. 2005)

"In granting the enhancement, the court made scant, generalized findings; it merely stated for the record that aliens coming from Mexico and other countries from the south seek to come under 'economic and physical stress, seeking work, seeking food, seeking to support their families, and for someone or more people to take advantage of that mind-set, holding them, in effect, hostage." Angeles-Mendoza at 747. "The district court only noted general characteristics commonly held by aliens seeking to be illegally smuggled and failed to mention a characteristic the defendant knowingly took advantage of, such that the offense demonstrated the extra measure of criminal depravity which §3A1.1 intends to more severely punish." Angeles-Mendoza at 747-748

---

[1] Although it is claimed that in a single instance the defendant engaged in corporal punishment of a child in the home, and on a different occasion another child was injured accidentally with scalding water (paragraph 16, page 7), it has never been alleged that either of these incidents were intentionally employed as a tactic to coerce payment of the debts that the victim owed to the defendant. Likewise, according to the presentence report the investigating agent has stated that there was no evidence of any other physical abuse. (paragraph 22, page 8). Thus the threat of deportation was the only coercive tactic employed by the defendant to commit the crime of forced labor.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

Additionally, although the defendant was obviously aware that the victims were immigrants she did not recruit or seek them out individually based upon any perceived vulnerability. To the contrary, each victim instead sought out the defendant, and initiated contact with her on their own to seek her assistance immigrating to the United States. According to the presentence investigation report, paragraph 20, page 8, this was acknowledged by the investigating agent who stated that "the victims were either related to the defendant or heard by word of mouth in their small village that she could assist them in moving to the United States."

To the extent that the presentence report may also justify application of the vulnerable victim enhancement because there were a number of minors who were found living in the home, this allegation will require a fact-intensive analysis. Minor children cannot automatically qualify as victims of the defendant's scheme merely because their parents chose to bring them to the United States when they immigrated here. There has been no showing that the defendant has caused these children to receive worse treatment in this country than they would have otherwise received back in Guatemala. The defendant did not want or direct anyone to bring their children with them to this country. This independent decision by the childrens' parents was completely unrelated to the defendant's scheme to commit financial exploitation of their parents.

### V. Personal History

Concepcion Malinek is 51 years old, a naturalized United States citizen, born in Fray Bartolome de Los Casas, Alta Vera Paz, Guatemala. The defendant married Jeffrey Malinek in 2005. Prior to her March 2019 arrest and detention in this matter she resided with her husband at the residence they owned together in Cicero, Illinois.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

The defendant's parents lived at the Cicero residence as well, until their passing, only days apart, due to COVID-19 complications in June 2020. The defendant has no children. Jeffrey Malinek, the defendant's husband, is supportive of the defendant and remains committed to their relationship.

The defendant was born out of wedlock, a circumstance that caused great difficulty for her mother. An unwed pregnancy in the Mayan culture is deeply taboo, and considered shameful. The defendant's grandmother sought to terminate the pregnancy by forcing a medication on the defendant's mother, which she refused to take. The defendant's mother left her house to deliver the baby alone, as the defendant's father had already abandoned her. The defendant's mother, Manuela, delivered the baby without proper professional medical assistance. The father reunited with Manuela when the defendant was approximately 5 years old. Manuela and Alberto remained together until their death in May of 2020. Alberto was an alcoholic who was abusive toward his family and had difficulty maintaining meaningful full-time employment.

The defendant and her many siblings lived in extreme poverty. By the age of 6 the defendant, the second oldest child, began doing agricultural work outside of the home to assist her family. Even with the defendant's assistance her family could not afford adequate food and clothing, and they resided together in a one room home. Alberto continued his abusive ways throughout the defendant's childhood into her early teenage years.

At the age of 13 the defendant joined a convent in Guatemala, as arranged by her mother Manuela. The defendant initially resisted this plan, but finally acquiesced when Manuela convinced her that this would be an opportunity to escape Alberto's abusive ways, and to obtain a formal education. The village where the defendant was raised had no formal schoolhouse or education system. Life in the convent was the only potential avenue that was

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

-10-

available for her to pursue her education. All of her educational opportunities, which did not start until after she joined the convent at 13 years old, came through the religious order.

The defendant remained a member of the convent in Guatemala for 19 years. Her time there was primarily devoted to missionary work -- focused on providing educational opportunities for underprivileged children, and caring for elderly, disabled, and sick people. In addition to teaching catechism and providing religious counseling for young couples in preparation for marriage, the defendant also learned and taught basic first-aid skills and healthcare for infants and toddlers.

After 19 years at the convent in Guatemala, the defendant was transferred to a convent in Milwaukee, Wisconsin, at the age of 32 years old. It was not the defendant's choice to leave Guatemala. She immigrated to the United States on a religious visa when she was sent here by her religious order. During the two years that she spent at the convent in Milwaukee, she worked and learned to speak English, but all of her earnings were kept by the religious order.

After approximately two years Ms. Malinek left the religious order and moved to Chicago to find work because her family in Guatemala needed her financial assistance. A friend who she met at the convent in Milwaukee was living in Chicago, and told her that she could find work there.

In Chicago the defendant initially began working on an assembly line at the El Milagro Tortilla Factory. Later she answered an advertisement to become a home healthcare worker earning minimum wage working for an elderly woman living in Oak Brook. She lived in her patient's home, and was responsible for taking care of all of her needs, feeding and dressing her, and arranging doctor visits through a private ambulance service. Her future husband, Jeffrey Malinek was one of the ambulance drivers.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

They began a two year courtship and married in 2005. The defendant became a naturalized United States Citizen in 2018. Throughout most of her working life the defendant sent a portion of her earnings back to her mother in Guatemala to help her family. With the remainder of her earnings the defendant bought a family home in Cicero, Illinois with her husband. Her parents eventually immigrated to the United States to live at the home. Jeffrey Malinek continues to be supportive of the defendant, even in light of the significant financial consequences that the defendant's conduct has caused for the two of them. The restitution that will be due, the forfeiture, and the credit card debt incurred from the costs advanced to the victims, have financially devastated the defendant and her husband.

The defendant has no prior criminal convictions of any kind. The defendant's current custodial situation, which began with her arrest on March 26, 2019, is the defendant's first and only jail experience. The defendant has physical limitations brought on by severe injuries sustained in a bus accident in 2015. The accident caused the death of multiple bus passengers, including a woman that was seated next to the defendant. The defendant sustained injuries to her leg, foot, and teeth, causing lifetime difficulties. In 2018 the defendant underwent surgery to remove a mass from under her arm. On a daily basis the defendant takes oral medication for Type II diabetes.

The defendant's confinement has taken a very substantial mental and emotional toll on her above and beyond the usual anxiety brought on by incarceration. The defendant has been incarcerated during the COVID-19 pandemic, which took the lives of her mother and father days apart in May, 2020. The loss of both parents and the inability to attend the religious service after their death was devastating to the defendant. While in custody the defendant has attended counseling, and has been prescribed Zoloft while in custody to deal with her anxiety and depression issues.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

## VI. Need for Sentence Imposed.

The sentencing guidelines have been made advisory and are no longer mandatory under the decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Booker requires the sentencing judge to begin the sentencing process by determining the applicable guideline range, but permits the judge, so long as they do not stray outside the statutory range, to sentence the defendant below or above the guideline range if the sentencing factors in the Sentencing Reform Act, 18 U.S.C. § 3553(a) warrant it. United States v. Roberson, 474 F. 3d 432 (7th Cir. 2007). The defendant acknowledges that the advisory guideline sentence is the presumptively reasonable sentence. United States v. Mykytiuk, 415 F. 3d 606 (7th Cir. 2005). However, the court should not presume that it is the correct sentence. Unites States v. Brown, 450 F. 3d 76 (1st Cir. 2006).

As a result of Booker and its progeny, it is now well settled that the sentencing courts are expected to treat the sentencing guideline as advisory, viewing them as but one factor to consider in fashioning a sentence that meets the statutory goals set forth by Congress in 18 U.S.C.§3553(a). Thus, this court is no longer bound solely by the guidelines but must consider the factors outlined in §3553(a). As long as this court considers all of the factors of §3353(a), its' "freedom to impose a reasonable sentence outside the range is unfettered." United States v. Demaree, 459 F. 3d 791, 794 (7th Cir. 2006). Pursuant to 18 U.S.C. §3553(a) the court must impose a sentence sufficient but not greater than necessary after considering the factors listed in §3553(a). These factors include: the nature of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and sentencing range established by sentencing guidelines.

In Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) the court confirmed that, as to the sentencing court, the guideline range is simply one

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

of several factors listed on 18 U.S.C. §3553 that must be considered in arriving at a just sentence, a sentence that is sufficient, but not greater than necessary, to meet the traditional purposes of criminal sentence. The District Court's job is not to impose a "reasonable" sentence but instead to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of section §3553(a)(2). United States v. Foreman, 456 F. 3d 638 (6th Cir. 2006). This language, also referred to as the "parsimony provision" of §3553(a), has become the "guidepost" for sentencing decision post-Booker. United States v. Ferguson, 456 F. 3d 660 (6th Cir. 2006).

A sentencing judge must make an independent determination of what sentence is sufficient, but not greater than necessary, to comply with the purposes of §3553(a) taking into account the advisory guideline range, the relevant §3553(a) factors, and any other non-frivolous arguments presented in support of a particular sentence. United States v. Wilms, 495 F.3d 277 (6th Cir. 2007).

### VII. Reasonable Sentence for this Defendant

Concepcion Malinek is 51 years old and she has tremendous rehabilitative potential because she has demonstrated the ability to live as a law-abiding citizen for the overwhelming majority of her lifetime. With the exception of her conduct in this case it has never been alleged that Ms. Malinek has engaged in any other unlawful behavior. The defendant has not proven herself to be a demonstrated recidivist who will continue to reoffend after repeated episodes of incarceration.

Several Federal Courts have recognized that a shorter term of incarceration may be sufficient to deter an offender who has not previously experience the deterrent effects of incarceration. United States v. Mishoe, 241 F. 3d 214, 220 (2nd Cir. 2001), United States v. Lewis, 459 Fed. Appx. 742 (10th 2012), United States v. Santoya, 493 F. Supp. 2d 1075,

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

-14-

1081 (E.D. Wisc. 2007). "A major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served [lengthy prison sentences] and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial… conversely, if a defendant served no time or only a few months for the prior offenses, [then a shorter sentence] for the current offense might be expected to have the requisite deterrent effect." Mishoe at 220. "Generally a lesser period of incarceration is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend". Santoyo at 1081.

      The defendant's first and only encounter with the criminal justice system has already been an especially onerous experience with an extraordinary deterrent effect. Her first impression of incarceration in a penal institution has been a lengthy period of time in custody during a global pandemic which prevented her from attending the funeral services of both of her parents. For a person with no prior experience in a prison system this will impress upon her that any criminal conduct in the future would be met with very harsh consequences. It is noteworthy that the defendant is older than most criminal offenders in the federal system. She also suffers from multiple serious medical conditions which further tend to justify some leniency at sentencing as well (including Type II Diabetes and physical limitations from her bus-accident injury)

      The defendant's underlying conduct did not demonstrate any extraordinary degree of sophistication in the planning and execution of her crime. For example, she did not

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

-15-

engage in any elaborate subterfuge to conceal her activities and avoid detection, indeed, she regularly invited government authorities into her home to inspect the premises and interview the residents. Although the presentence report indicates that "victims reported squalid conditions in the basement specifically cockroaches and walls covered with mold" (Page 6 Paragraph 13) and the "victims reported living in conditions of squalor" (Page 8 Paragraph 21), the conditions were not so extreme that they aroused suspicion among the defendant's husband and family. The presentence report acknowledges that "while the defendant's husband resided in the house at the same time, as did six other close family members, there was no evidence which showed that anyone other than the defendant was involved in the instant offense." (Page 8, Paragraph 21).

The defendant did not resist arrest or become uncooperative when she was arrested. Since her arrest the defendant has exhibited respect for the law and the judicial process by pleading guilty and accepting responsibility for her actions. The public will be adequately protected from further crimes by this defendant due to the deterrent effect of her imprisonment, which will be followed by mandatory supervised release. The defendant is heartbroken that her mistakes have caused a separation from her husband and family, and have caused her to suffer financial ruin. She fully understands that any future criminal activity would result in even more severe punishment and consequences going forward. Thankfully Ms. Malinek will enjoy the financial and emotional support of her husband as she works to reintegrate herself back into legitimate society and redeem herself in the eyes of her community and society at large. Under these circumstances a shorter prison term, below the low end of the applicable guideline range, would suffice to serve the goals of sentencing.

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

### VIII. Conditions of Supervised Release

Defense counsel has reviewed the proposed conditions of supervised release with the defendant. The defendant opposes special condition 14, found on page 23, which requires sex offender evaluation and treatment.

### IX. Defense Sentencing Witnesses

At the upcoming sentencing hearing the defendant may call the following witnesses to give testimony on the listed general topics and subjects for the corresponding amounts of time:

| Witness | Subject/Topic | Time |
|---|---|---|
| Julio Ceasar Pan Macz | living conditions, medical care, and repayment of expenses | 20 minutes |
| Dominga Pan Macz | living conditions, freedom of movement, household maintenance | 20 minutes |
| Odelia Pan Macz | employment opportunities, household expenses | 20 minutes |
| Mary Barrera | home visits, intensive supervision appearance program | 30 minutes |
| Maria Choc Macu | child care at Cicero residence, medical care provided | 35 minutes |
| Jeffrey Malinek | character witness, finances of running household, loans to household members, and prepayment of expenses. | 45 minutes |

Respectfully Submitted,

January 18, 2021
s/ROBERT L. RASCIA,
Attorney for the Defendant

January 18, 2021
s/LIAM KELLY,
Attorney for the Defendant

LAW OFFICES OF
ROBERT LOUIS RASCIA, LTD
650 NORTH DEARBORN
SUITE 700
CHICAGO, IL 60654
(312) 994-9100

rrascia@rasciadefense.com
liamkelly@rasciadefense.com

-17-