1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3    UNITED STATES OF AMERICA,          )
                                         )
 4              Plaintiff,               )
                                         )
 5              v.                       )   No. 19 CR 00277
                                         )
 6    CONCEPCION MALINEK,                )   Chicago, Illinois
                                         )   July 28, 2020
 7              Defendant.               )   1:00 p.m.

 8         TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Change of plea

 9              BEFORE THE HONORABLE EDMOND E. CHANG

10    APPEARANCES TELEPHONICALLY:

11    For the Plaintiff:        HON. JOHN R. LAUSCH, JR.
                                United States Attorney
12                              BY:  MR. CHRISTOPHER V. PARENTE
                                Assistant United States Attorney
13                              219 South Dearborn Street, Suite 500
                                Chicago, Illinois 60604
14                              (312) 353-5300
                                christopher.v.parente@usdoj.gov
15
      For the Defendant:        MR. ROBERT L. RASCIA
16                              650 North Dearborn Street
                                Suite 700
17                              Chicago, Illinois 60654
                                (312) 994-9100
18                              rrascia@rasciadefense.com

19    ALSO PRESENT TELEPHONICALLY:
                                MR. JORGE CARBAJOSA,
20
                                Court Interpreter
21

22    Court Reporter:          Judith A. Walsh, CSR, RDR, F/CRR
                                Official Court Reporter
23                              219 South Dearborn Street, Room 2118
                                Chicago, Illinois 60604
24                              (312) 702-8865
                                judith_walsh@ilnd.uscourts.gov
25
```

1          (Proceedings heard telephonically:)

2          THE CLERK:  The United States District Court for the

3    Northern District of Illinois is now in session, the Honorable

4    Edmond E. Chang now presiding.

5          19 CR 277, USA versus Concepcion Malinek.

6          THE COURT:  Good afternoon.  This is Judge Chang.

7    Let me ask each side to announce their appearance.  And I'll

8    first ask the government to announce his appearance.

9          MR. PARENTE:  Good afternoon, your Honor.  Chris

10   Parente for the United States.

11         THE COURT:  Okay.  And then for defense counsel?

12         MR. RASCIA:  Good afternoon, your Honor.  Robert

13   Rascia for Ms. Malinek.

14         THE COURT:  Okay.  And I believe we have the

15   interpreter on the line already.

16         THE INTERPRETER:  Yes.  Good afternoon.  This is

17   Jorge Carbajosa, certified Spanish interpreter.

18         With your permission, would you like me to translate

19   everything that's been said, or would you like to tell me when

20   to begin translating?

21         THE COURT:  Yes.  Mr. Carbajosa, you may go ahead.

22   And then I understand we'll be doing consecutive

23   interpretation in light of the fact that obviously we're on

24   the phone.  So we'll try to pause wherever we can.  And if we

25   don't pause at the right moment, please go ahead and

1    interrupt, and we'll stop.

2         But I'll stop now and let you translate what's been

3    said.

4       (Pause for translation.)

5         THE INTERPRETER:  Okay.  Over.

6         THE COURT:  And I understand Ms. Malinek is on the

7    line.

8         Ms. Malinek, can you just please state your first and

9    last name?

10        THE DEFENDANT:  (Speaking in Spanish.)

11        THE COURT:  Okay.  And I think just for the record,

12   Mr. Carbajosa, go ahead and interpret that.

13      (Pause for translation.)

14        THE DEFENDANT:  My name is Concepcion, and my last

15   name is Malinek.

16        THE COURT:  Thank you.  We are here for a change of

17   plea hearing.  And before we begin, I want to make sure that

18   Ms. Malinek has agreed to proceed by phone.

19        THE DEFENDANT:  Yes.

20        THE COURT:  So, Ms. Malinek -- yes.  Ms. Malinek, I

21   am going to first ask the courtroom deputy to put you under an

22   oath to tell the truth.  And then we can talk about that as

23   well as the plea.

24        So let's put her under oath, please.

25        THE CLERK:  Would you please raise your right hand?

1    You do solemnly swear or affirm --

2            THE DEFENDANT (in English):  Yes.

3            THE CLERK:  -- that all the statements you are about

4    to make in the case now before the court will be the truth,

5    the whole truth, and nothing but the truth?

6        (Pause for translation.)

7            THE DEFENDANT:  Yes.

8            THE COURT:  Ms. Malinek, this is Judge Chang again.

9    So did you have a chance to speak with Mr. Rascia about

10   proceeding by phone?

11           THE DEFENDANT:  Yes.  He has come to visit me.  He

12   has come to take the paperwork.  And he's also called me.

13           THE COURT:  Okay.  So, Ms. Malinek, do you agree to

14   proceed by phone?

15           THE DEFENDANT:  Yes.

16           THE COURT:  All right.  I find that the defendant has

17   had the chance to confer with counsel and agrees to proceed by

18   phone where video is not reasonably available in light of the

19   instability of video connections that we've been having.

20           Now, Ms. Malinek, before I can accept the change of

21   plea from anyone, I have to make sure of a number of things.

22   I have to make sure that you're mentally competent to plead

23   guilty; that is, that you're not suffering from some sort of

24   mental illness that would prevent you from understanding what

25   you're doing here today.

1            THE DEFENDANT:  I'm fine.

2            THE COURT:  Yes.  We'll talk about that in more

3 detail.  I just want to summarize the hearing.  You have to be

4 informed of all the rights you're giving up, and I have to

5 make sure that the plea is voluntary, meaning no one is

6 threatening you to force you to plead guilty.

7            I need to make sure that you've had the assistance of

8 a lawyer and that there is a factual basis for the plea.  So

9 we'll go through these things one by one.

10           If at any time you want to stop and speak with

11 Mr. Rascia privately, we can arrange that through the phone

12 system.  So just speak up and get his attention or get my

13 attention.  I also --

14           THE DEFENDANT:  Very well.  Thank you.

15           THE COURT:  All right.  Now, I want to make sure that

16 you understand you do have a right against self-incrimination.

17 That means you have a right to not say anything that tends to

18 show you are guilty.  But in a hearing like this, if you go

19 through with it, of course you will be making statements that

20 tend to show you are guilty.  That means if you go through

21 with this hearing, you are giving up your rights against

22 self-incrimination.

23           Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Now, before we go further, I should also

1   warn you that if you make a false statement during today's

2   hearing, because you are under oath, you could be prosecuted

3   separately for the crime of perjury or for the crime of false

4   statements.  Do you understand that?

5           THE DEFENDANT:  Yes, I understand.

6           THE COURT:  All right.  Let's make sure you're

7   competent to plead guilty.  I've already asked you for your

8   full name, but let me ask you, how old are you?

9           THE DEFENDANT:  I am 50 years old.

10          THE COURT:  Are you married?

11          THE DEFENDANT:  Yes.  Yes.

12          THE COURT:  Okay.  And do you have any children?

13          THE DEFENDANT:  No.

14          THE COURT:  How far did you get in school,

15  Ms. Malinek?

16          THE DEFENDANT:  12, 12 years.

17          THE COURT:  Okay.  Did you actually get a high school

18  degree?

19          THE DEFENDANT:  Yes, in Guatemala.  I am from

20  Guatemala.

21          THE COURT:  Okay.  Can you tell me what was the last

22  job that you held?

23          THE DEFENDANT:  Here in America, I worked in the

24  department of disabled, caregiver, nursing assistant.

25          THE COURT:  All right.  And in terms of your physical

1 health, are you under the care of a doctor for any ongoing

2 physical condition?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Okay.  And what are the health

5 conditions?

6         THE DEFENDANT:  I am diabetic, and I'm also -- I had

7 an accident in 2015, and my doctor -- I could not walk 100

8 meters.  I need -- my foot is broken.  I have hardware on the

9 right one.

10         THE COURT:  Are you taking any medication for any

11 condition?

12         THE DEFENDANT:  Yes.  I'm taking the Formin for

13 diabetic people.

14         THE COURT:  And how long have you been taking Formin?

15         THE DEFENDANT:  I think four, it's going to be five

16 years.

17         THE COURT:  In all the time that you have been taking

18 Formin, has it ever made it harder for you to think or

19 understand?

20         THE DEFENDANT:  No.

21         THE COURT:  All right.  Let's talk about your mental

22 health.  Have you ever been diagnosed or suffered from a

23 mental illness?

24         THE DEFENDANT:  No, just when I fell, the accident on

25 the bus, it took six to a year.  You would have to see the

1     photograph to understand it.

2         THE INTERPRETER:  The interpreter didn't catch

3     everything she said.

4         THE COURT:  Let me back up and then ask, are you

5     talking about an injury to your head after the accident?

6         THE DEFENDANT:  Yes, because my head went under the

7     bus.

8         THE COURT:  I see.  So after that injury and after

9     you recovered from it, have you found it more difficult to

10     think or understand things, or have you recovered?

11         THE DEFENDANT:  I have recovered.

12         THE COURT:  Okay.  Other than the medication for

13     diabetes, are you under the influence of any other drug, or

14     are you under the influence of alcohol?

15         THE DEFENDANT:  No.

16         THE COURT:  Okay.  Mr. Rascia, are you satisfied that

17     Ms. Malinek is mentally competent to plead guilty?

18         MR. RASCIA:  Yes, your Honor.

19         THE COURT:  All right.  And I take it, Mr. Rascia,

20     that you have spent on the order of hours with her either over

21     the phone or in person?

22         MR. RASCIA:  25 face-to-face visits with her and in

23     excess of 50 telephone conversations.

24         THE COURT:  All right.  Thank you.

25         And then, Mr. Parente, do you have any doubts as to

1    Ms. Malinek's competency to plead guilty?

2             MR. PARENTE:  No, your Honor.

3             THE COURT:  I find that the defendant is mentally

4    competent to plead guilty, and she clearly has understood all

5    the questions I've asked.  There's no mental health history to

6    be concerned with.  So she is competent to plead guilty.

7             Let's make sure you understand the charge to which

8    you propose to plead guilty.  For this part of the hearing, I

9    just want to make sure that you did receive a copy of the

10   superseding indictment which had all the charges in it.

11            THE DEFENDANT:  Yes, that's the way it was.

12            THE COURT:  Did you have the opportunity and did you

13   discuss with your lawyer all of the charges and everything you

14   know about the case?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Are you satisfied with the efforts and

17   advice that Mr. Rascia has provided for you in this case?

18            THE DEFENDANT:  Yes, very satisfied.

19            THE COURT:  And does that also include preparing the

20   plea declaration that you signed?  Are you satisfied with his

21   advice in preparing that plea declaration?

22            THE DEFENDANT:  Yes, very satisfied.

23            THE COURT:  Now, the charge that you propose to plead

24   guilty to is specifically Count 10 which is a count that

25   charges forced labor.  And I'm going to make sure you

1  understand the elements of that crime.

2         Specifically, in order for the government to prove

3  someone guilty of this kind of charge, they must prove that

4  the defendant knowingly provided and obtained labor and

5  services of a person by means of either serious harm or

6  threats of harm or abuse or threatened abuse of legal process

7  or by engaging in a plan intended to cause the victim to

8  believe that the victim or someone else would suffer serious

9  (inaudible).

10      (Pause for translation.)

11         THE COURT:  For the record, that the victim or

12  someone else would suffer serious harm.

13         All right.  So, Ms. Malinek, do you understand the

14  elements of that crime?

15         THE DEFENDANT:  Yes, I understand.

16         THE COURT:  All right.  Let's talk about the plea

17  declaration.  And before I ask you a question on it, I just

18  want to confirm with Mr. Rascia.

19         The plea declaration, is it the same as what you

20  emailed a couple of weeks ago?

21         MR. RASCIA:  Your Honor, on Page 5 of the plea

22  declaration --

23         THE COURT:  Okay.

24         MR. RASCIA:  -- paragraph 19(c).

25         THE COURT:  All right.

1    MR. RASCIA:  We're going to ask that as follows:  The

2    defendant is aware that the government will likely assert

3    guideline, 4.1B3(a) applies.  And there should be a period

4    after the word "applies."  Part of that sentence is going to

5    be stricken.  The paragraph will conclude with, "the defendant

6    reserves the right to challenge that application."

7        We have prepared a new original, and we have an

8    appointment out at the jail for Thursday to have Ms. Malinek

9    re-sign the new original.  But that's the only change.  I did

10   discuss the change with Ms. Malinek and read to her the

11   applicable paragraph of the guideline.

12       (Pause for translation.)

13       MR. RASCIA:  Your Honor --

14       THE COURT:  Thank you.

15       MR. RASCIA:  -- additionally, Ms. Malinek, the

16   language of the guideline, I provided her with the legal

17   definition of the (inaudible) --

18       THE INTERPRETER:  The interpreter could not hear the

19   defense attorney.

20       THE COURT:  Mr. Rascia?  I think all we caught was

21   that you showed her the language of the guideline.

22       MR. RASCIA:  Your Honor, and provided to Ms. Malinek

23   (inaudible) --

24       THE COURT:  Mr. Rascia, you cut out again.

25       MR. RASCIA:  Judge, in my last conversation with

1    Ms. Malinek, I also provided to her the legal definition of

2    the term "peonage" because that term is used in the guideline.

3                THE INTERPRETER:  The interpreter has to look up

4    "peonage."  It will just be a second.

5                MR. RASCIA:  Your Honor, I can read to the

6    interpreter the definition that I provided to Ms. Malinek.

7                THE COURT:  I -- yes, I think the interpreter is

8    saying that for the word "peonage."

9                MR. RASCIA:  Oh, sorry.

10               THE INTERPRETER:  The interpreter just needs one

11   second.  It's coming up in the dictionary.  Of course, there

12   is no definition.  Is it p-i-a-n-a-g-e?

13               MR. RASCIA:  It is p-e-o-n-a-g-e.

14               THE INTERPRETER:  Oh, p-e-o-n-a-g-e.  Okay.  A

15   similar Spanish word.  Okay.  It's a Latin-based word.  That's

16   what I thought.  It's just the transcription spelling was

17   different.  It was confusing me.

18        (Pause for translation.)

19               THE COURT:  Ms. Malinek, other than the one change

20   that Mr. Rascia just discussed, did you have a chance to read

21   or have the plea declaration read to you?

22               THE DEFENDANT:  Yes, he read it to me.

23               THE COURT:  All right.  And do you understand the

24   terms of the plea declaration?

25               THE DEFENDANT:  Yes, I understand.

1    THE COURT:  Do you understand that because you have

2  no plea agreement with the government, there are no agreements

3  between you and the government?

4    THE DEFENDANT:  Yes, I understand.

5    THE COURT:  Has anyone made any promise to you that

6  is not in that written plea declaration in order to persuade

7  you to plead guilty?

8    THE DEFENDANT:  No.

9    THE COURT:  All right.  And let me just make sure by

10  asking the lawyers first, and maybe I'll start with

11  Mr. Rascia, is there a collateral consequence to this plea of

12  guilty in terms of any immigration consequence?

13    MR. RASCIA:  Your Honor --

14    THE INTERPRETER:  Go ahead, Mr. Rascia.

15    MR. RASCIA:  Ms. Malinek is a naturalized United

16  States citizen.

17    THE COURT:  Okay.  And does the government -- oh, I'm

18  sorry.

19    Go ahead, Interpreter.

20    (Pause for translation.)

21    THE COURT:  Okay.  Does the government agree with

22  that, Mr. Parente?

23    MR. PARENTE:  Yes, your Honor.

24    THE COURT:  Okay.  Then let's make sure that

25  Ms. Malinek understands what are the maximum penalties

1  provided by the law for a crime of this sort.  For this part

2  of the hearing, I'm going to ask actually the government to

3  say what it believes are the maximum penalties on this Count

4  10.

5          MR. PARENTE:  Yes --

6          THE COURT:  Let's let the interpreter --

7          MR. PARENTE:  Yes, your Honor.

8      (Pause for translation.)

9          THE COURT:  Mr. Parente?

10         MR. PARENTE:  Your Honor, the defendant faces up to

11  20 years' imprisonment, up to $250,000 fine, up to three years

12  of supervised release, a $100 special assessment, and then

13  there's a forfeiture allegation which specifically alleges

14  $3,549 in cash seized from her residence as well as the

15  potential seizure of her residence.

16         And, your Honor, on top of that, the government is

17  seeking restitution.  And the defendant has agreed that

18  restitution will apply to all ten victims stated in the

19  superseding indictment.

20         And the government has provided defense counsel with

21  an estimate of that restitution which at this point is

22  approximately $112,545.

23         THE COURT:  Okay.  Ms. Malinek, do you understand

24  those are the potential penalties for the crime for which you

25  propose to plead guilty?

1        THE DEFENDANT:  Yes, I understand that you,

2   Mr. Judge, can order that I pay that.

3        THE COURT:  Okay.  I want to make sure, beyond the

4   payment part, do you understand all the other possible

5   potential penalties such as the term of imprisonment, the

6   fine, supervised release, the special assessment, restitution,

7   and forfeiture?

8        THE DEFENDANT:  Yes, I understand.

9        THE COURT:  Now, in picking a sentence for you, which

10  won't happen for a few months, do you understand that I will

11  have to consider all of the goals and factors of sentencing

12  that are set out in a law that you can find at Title 18,

13  United States Code Section 3553(a)?

14       THE DEFENDANT:  Yes, I understand.

15       THE COURT:  Now, if I pick a sentence that is higher

16  than what you and Mr. Rascia propose, do you understand that

17  that would not be a reason to withdraw or take back the plea

18  of guilty?

19       THE DEFENDANT:  Yes, I understand.

20       THE COURT:  One of the goals and factors of

21  sentencing are the United States Sentencing Guidelines.  The

22  guidelines are a set of rules where I calculate two numbers:

23  An offense level and a criminal history category.  And then

24  based on a table, the guidelines set forth advice as to what

25  the term of imprisonment should be.

1     Do you understand, I will have to calculate and

2 consider that advice?

3     THE DEFENDANT:  Yes, your Honor.  I understand.

4     THE COURT:  Now, the same thing for the guidelines.

5 If I calculate the guidelines to be higher than what you and

6 Mr. Rascia propose, that would not be a basis or reason to

7 take back the plea.

8     THE DEFENDANT:  Yes, your Honor.  I understand.

9     THE COURT:  Before we get to your trial rights, let

10 me just confirm that, has anyone threatened you or your family

11 or anyone else in order to force you to accept a plea of

12 guilty?

13     THE DEFENDANT:  No.  It's voluntary.

14     THE COURT:  All right.  Let's talk about those trial

15 rights.  First, do you understand you do have a right to

16 continue to plead not guilty and instead insist on a trial by

17 jury?

18     THE DEFENDANT:  Yes, I understand.

19     THE COURT:  At any trial, you would be presumed

20 innocent of all the crime, and it would be the government's

21 burden to show that you're guilty beyond a reasonable doubt.

22 Do you understand that?

23     THE DEFENDANT:  Yes, I understand.

24     THE COURT:  You would also have the right to the

25 assistance of a lawyer during the trial, before the trial, and

1   all the steps after the trial.  And if at some point you were

2   not able to afford an attorney, I would appoint one for you

3   free of charge.  Do you understand that right to the help of a

4   lawyer?

5            THE DEFENDANT:  Yes, I understand.

6            THE COURT:  You would also have the right to see and

7   hear all of the government's witnesses against you.  And not

8   only would you have a right to see and hear the testimony

9   against you, you through your lawyer could ask them questions

10  under oath through what we call cross-examination.

11           So do you understand your right to see, hear, and

12  question the witnesses against you?

13           THE DEFENDANT:  Yes, I understand.

14           THE COURT:  You also would have a right to present

15  evidence.  And if you needed the power of the Court to require

16  someone or some company to produce evidence to you or to

17  require them to come in to court and testify in your defense,

18  your lawyer could serve what we call subpoenas which are court

19  orders to produce evidence or come to court to testify.

20           Do you understand your right to gather evidence and

21  present testimony through subpoenas?

22           THE DEFENDANT:  Yes, I understand.

23           THE COURT:  Now, there is one witness that no one can

24  force to testify, and that is you.  You have the absolute

25  right to not testify, and if you decided to not testify, I

1  would instruct the jury that they could take no suggestion or

2  hint of guilt just because you decided to not testify.  Do you

3  understand that right?

4          THE DEFENDANT:  Yes, I understand.

5          THE COURT:  You also would have a right to testify if

6  you wanted to.  No one can stop you from testifying, not your

7  lawyer, not the government, not the Court.  So do you

8  understand you also would have had a right to testify on your

9  own defense?

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  In the federal system, it is possible to

12  have what we call a bench trial.  In a bench trial, instead of

13  a jury deciding whether you are guilty or not guilty, the

14  Court, I, would decide whether you are guilty or not guilty.

15  But in the federal system, if you have a bench trial, you

16  would have to agree to it, the government also would have to

17  agree to it, and then lastly I would also have to agree to

18  hold a bench trial.

19          But do you understand there was at least the

20  possibility of a bench trial?

21          THE DEFENDANT:  Yes, I understand.

22          THE COURT:  Now, if you did choose a jury trial, of

23  course we would hold a jury trial, and you and your lawyer

24  would have the right to participate in picking the jury.  We

25  would call in a few dozen individuals who are eligible to

1    serve, and we would ask them questions to see if they could be

2    fair.  You could then prevent someone from sitting on the jury

3    either by convincing me that someone could not be fair, or you

4    would have 11 or 12 challenges, peremptory challenges, where

5    you could just stop those people from sitting on the jury.

6            Do you understand your right to participate in that

7    jury selection procedure?

8            THE DEFENDANT:  Yes, your Honor, I understand.

9            THE COURT:  Okay.  Almost there.  Once the jury heard

10   all the evidence and arguments of the lawyers, then in order

11   to reach a verdict, that is, to decide the case, they would

12   have to be unanimous, meaning all 12 of them would have to

13   agree on the verdict.  Also, the jury would have to give

14   separate consideration to each count against you.

15           So do you understand your right to a unanimous jury

16   verdict and separate consideration on every count?

17           THE DEFENDANT:  Yes, your Honor.  I understand.

18           THE COURT:  Lastly, if you went to trial and you were

19   convicted, you would have a right to appeal from any mistakes

20   at the trial, any mistakes leading up to the trial, and any

21   mistakes after the trial.

22           So do you understand that part of the trial right is

23   also a right to appeal from trial mistakes?

24           THE DEFENDANT:  Yes, your Honor, I understand.

25           THE COURT:  Having heard all of the rights that you

1  would be giving up by pleading guilty, do you still intend to

2  plead guilty?

3         THE DEFENDANT:  Yes, your Honor.

4         THE COURT:  Then we've reached the part of the

5  hearing where I just need to make sure there are facts that

6  support the plea of guilty.  For this part of the hearing, I

7  am going to ask Mr. Rascia to summarize what the facts would

8  show.  Please listen carefully, Ms. Malinek, to the summary

9  because after he is done, I will turn back to you, and I will

10 ask you whether you agree with all of the facts that he just

11 stated.

12         All right.  Mr. Rascia?

13        MR. RASCIA:  Thank you.  In support of her guilty

14 plea, the defendant admits the following:  Between in or

15 around October 2009 and in or around August 2014 in the

16 Northern District of Illinois, Eastern Division, and

17 elsewhere, Concepcion Malinek did knowingly provide and obtain

18 the labor and services of a person identified in the

19 superseding indictment as Victim 10 --

20        (Pause for translation.)

21        MR. RASCIA:  -- by means of, A, serious harm and

22 threats of serious harm to Victim 10 or another person; B,

23 abuse and threatened abuse of the law and legal process; and

24 C, a scheme, plan, and pattern intended to cause Victim 10 to

25 believe that if Victim 10 did not perform such labor and

1   services, Victim 10 or another person would suffer serious

2   harm --

3          (Pause for translation.)

4          MR. RASCIA:  -- in violation of Title 18, United

5   States Code Sections 1589(a)(2), (a)(3), and (a)(4).

6          More specifically, in 2009 Malinek agreed to assist

7   Victim 10, a citizen of Guatemala, to illegally enter the

8   United States for a fee set by Malinek to be paid by Victim 10

9   in the amount of $8,000.

10          After Victim 10 entered the United States, she

11   resided at the defendant's residence in Cicero, Illinois.

12   Upon arrival at the defendant's residence, the defendant

13   increased the fee due from Victim 10 for the services provided

14   and added additional fees for additional services to be

15   provided to Victim 10 by the defendant.

16          Malinek allowed Victim 10 to reside at her residence

17   and continued to demand payment of the debt Malinek claimed

18   Victim 10 owed her for the services provided.  While Victim 10

19   resided at Malinek's residence, she was employed.  Defendant

20   demanded and received from Victim 10 a substantial portion of

21   Victim 10's earnings to apply towards the debt owed by Victim

22   10 to the defendant.

23          The defendant demanded payment of the debt from

24   Victim 10, and when Victim 10 did not make a prompt payment of

25   the debt defendant claimed was owed to her, the defendant

1    threatened to contact immigration authorities to seek Victim

2    10's deportation back to Guatemala.

3           Defendant acknowledges that she assisted for a fee

4    other individuals to enter the United States from 2009 through

5    2019 identified in the superseding indictment as Victims 1

6    through 9, Counts 1 through 9 of the superseding indictment.

7    The defendant claimed these individuals owed a debt to her for

8    providing services and housing them in an amount determined by

9    the defendant.  The defendant demanded prompt payment of this

10    debt and threatened these individuals with deportation to

11    Guatemala as a means to collect payment.

12           Additionally, the defendant assisted the individuals

13    described as Victim 1, Victim 2, Victim 4, and Victim 7,

14    Counts 11 through 14 of the superseding indictment, in

15    obtaining fraudulent identity documents including fraudulent

16    legal permanent residency cards and fraudulent Social Security

17    cards so these individuals could obtain employment.

18           Your Honor, additionally I would note that during my

19    conversations with Ms. Malinek including reviewing the

20    indictment, discussing the discovery, and preparing the plea

21    declaration, the individuals described in the superseding

22    indictment as Victims 1 through 10, their actual identities

23    were provided to Ms. Malinek so she knows who each individual

24    is in each count.

25           THE COURT:  Thank you, Mr. Rascia.

1          Ms. Malinek, are all the facts that Mr. Rascia just

2  described true?

3          THE DEFENDANT:  Yes.  Yes, your Honor.

4          THE COURT:  Do you disagree with any of the facts

5  that he just stated?

6          THE DEFENDANT:  No.

7          THE COURT:  Then how do you plead to Count 10, forced

8  labor:  Guilty or not guilty?

9          THE DEFENDANT:  Guilty.

10         (In English)  Your Honor.

11         THE COURT:  It is the finding of the Court that the

12  defendant is mentally competent to plead guilty.  She knows

13  the rights she's giving up.  The plea is voluntary.  She

14  understands the charge to which she has just pled, and there

15  is a factual basis for the plea.  So I will accept the plea.

16         Let's give out a sentencing date.

17         THE CLERK:  October 20th at 3:00 o'clock.

18         THE COURT:  And then we are still on the limited

19  schedule in terms of in-person hearings.  Let me ask

20  Mr. Parente just so that I understand the scheduling of this,

21  would you anticipate at this time any victims making live

22  statements, or you're not sure yet?

23         MR. PARENTE:  Judge, we are hopeful that we'll have

24  at least a few give a statement either in person, by phone, or

25  in writing depending on what they decide.

1      THE COURT:  Okay.  Just watch the docket entry and,

2  of course, provide victim notification if I decide to change

3  the date before we post today's entry because I might need to

4  give more time than if we start at 3:00 o'clock.

5      The sentencing memoranda deadlines and

6  cross-responses will be in the docket entry.  The probation

7  office will disclose the sentencing recommendation to the

8  parties.

9      And the sentencing memos, Mr. Rascia, if you could

10  just make sure to -- you can throw it in a footnote somewhere

11  but just some statement as to whether the defendant is willing

12  to proceed either by video or phone instead of in person.

13      Okay.  Anything else for the government?

14      MR. PARENTE:  No, your Honor.  Thank you.

15      THE COURT:  Anything else from the defense?

16      MR. RASCIA:  No, your Honor.  Ms. Malinek is out at

17  Livingston County.  I don't think that that situation is going

18  to change.  So hopefully, the probation office will agree to

19  come out there to do the interview.

20      THE COURT:  Yes.  They might be doing these by remote

21  means, but I'm not 100 percent sure of that.  You can

22  certainly discuss that with them.

23      Let's let the interpreter have a shot at this.

24      (Pause for translation.)

25      THE COURT:  All right.  Anything else, Mr. Rascia?

1        MR. RASCIA:  No, your Honor.  Thank you.

2        THE COURT:  All right.  I'll, of course, vacate the

3   pretrial deadlines and trial setting.  And I'll exclude time

4   on the other counts in light of the pending sentencing.

5        Any objection to that, Mr. Rascia?

6        MR. RASCIA:  No, your Honor.

7        One final thing.  As we had to make a correction to

8   the plea declaration which is going to be re-signed, and I'll

9   get it to your courtroom deputy, can I ask that the corrected

10  one is the one that gets posted on the docket?

11       THE COURT:  Yes, sure.  What we might do is post the

12  other one, and we'll make it clear that it's superseded just

13  to make a record in terms of the first one that was signed.

14       MR. RASCIA:  All right.  Then I'll --

15       THE COURT:  Of course, we will -- yes.  Go ahead.

16       MR. RASCIA:  I will title the new one as an amended

17  plea declaration.

18       THE COURT:  That is fine.

19     (Pause for translation.)

20       THE COURT:  We are adjourned.

21     (Proceedings adjourned at 2:08 p.m.)

22

23

24

25

1          C E R T I F I C A T E

2          I, Judith A. Walsh, do hereby certify that the

3    foregoing is a complete, true, and accurate transcript of the

4    telephonic proceedings had in the above-entitled case before

5    the Honorable EDMOND E. CHANG, one of the judges of said

6    court, at Chicago, Illinois, on July 28, 2020.

7

8    */s/ Judith A. Walsh, CSR, RDR, F/CRR*_____          July 12, 2021

9    Official Court Reporter

10   United States District Court

11   Northern District of Illinois

12   Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25