1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        )
                                       )
 4                 Plaintiff,          )
                                       )
 5                 v.                  )  No. 19 CR 00277
                                       )
 6    CONCEPCION MALINEK,              )  Chicago, Illinois
                                       )  February 8, 2021
 7                 Defendant.          )  10:00 a.m.

 8                 TRANSCRIPT OF TELEPHONIC PROCEEDINGS

 9              BEFORE THE HONORABLE EDMOND E. CHANG

10    APPEARANCES TELEPHONICALLY:

11    For the Plaintiff:       HON. JOHN R. LAUSCH, JR.
                               United States Attorney
12                             BY:  MR. CHRISTOPHER V. PARENTE
                               Assistant United States Attorney
13                             219 South Dearborn Street, Suite 500
                               Chicago, Illinois 60604
14                             (312) 353-5300
                               christopher.v.parente@usdoj.gov
15
      For the Defendant:       MR. ROBERT L. RASCIA
16                             650 North Dearborn Street, Suite 700
                               Chicago, Illinois 60654
17                             (312) 994-9100
                               rrascia@rasciadefense.com
18
      ALSO PRESENT:            MS. ANNA MAITLAND
19

20    Court Reporter:         Judith A. Walsh, CSR, RDR, F/CRR
                               Official Court Reporter
21                             219 South Dearborn Street, Room 2118
                               Chicago, Illinois 60604
22                             (312) 702-8865
                               judith_walsh@ilnd.uscourts.gov
23

24

25
```

1    (Proceedings heard telephonically:)

2         THE CLERK:  The United States District Court for the

3   Northern District of Illinois is now in session, the Honorable

4   Edmond E. Chang presiding.

5         19 CR 277, USA versus Concepcion Malinek.

6         THE COURT:  Good morning.  This is Judge Chang.

7   Since we're proceeding by phone, I'll just air traffic control

8   the appearances a little bit.  If I can have government

9   counsel announce his appearance for the record.

10        MR. PARENTE:  Good morning, your Honor.  Chris

11  Parente.

12        THE COURT:  All right.  And defense counsel?

13        MR. RASCIA:  Good morning, your Honor.  Robert Rascia

14  for Ms. Malinek.

15        THE COURT:  All right.  Good morning.

16        And is there anyone else who needs to make an

17  appearance on the record?  I'll just pause for a second.

18        MS. MAITLAND:  I'm not sure --

19        THE COURT:  I'm sorry.  Who is this?

20        MS. MAITLAND:  This is Anna Maitland.  I am the

21  victims advocate attorney and immigration attorney for this.

22  I don't know if I need to be on the record.

23        THE COURT:  Okay.  Well, just to be on the safe side,

24  why don't you -- if you could spell your first and last name.

25        MS. MAITLAND:  Anna, A-n-n-a, Maitland,

1  M-a-i-t-l-a-n-d.

2         THE COURT:  All right.  Thank you.

3         All right.  This is a status hearing because there

4  has been some communication between counsel and the courtroom

5  deputy about whether any person is going to be testifying at

6  the sentencing in the courtroom as opposed to by some remote

7  means.  So let me just make sure I have a sense of what the

8  proposals are at least.

9         So, Mr. Parente, for the government, are you

10 proposing some victim testimony but by remote means?  Is that

11 correct?

12        MR. PARENTE:  Yes and no, Judge.  To be clear, these

13 are going to be victim impact statements, so this will not be

14 testimony on factual disputes that the parties have.  This

15 will be the victims of the offense making a statement to the

16 Court about how this crime affected them.  So it's not going

17 to be, this will not be testimony.

18        THE COURT:  Okay.  They will describe, however,

19 things like living conditions and how the offense impacted

20 them; is that correct?

21        MR. PARENTE:  That's -- that's possible, yes, Judge.

22 I told them this is their chance to address your Honor with,

23 you know, how this crime impacted them and kind of have given

24 them a blank slate in that regard.

25        THE COURT:  All right.  And --

1       MR. PARENTE:  But nothing towards enhancements for

2   guideline purposes.

3       THE COURT:  Right.  Well, I understand for guidelines

4   purposes, but I asked about living conditions in particular

5   because I see from the defense sentencing filing that the

6   defense plans on calling a number of witnesses.  And one topic

7   of testimony is supposedly going to be living conditions.

8       So I do have some concern that this will go beyond

9   the usual victim impact statement where there might be some

10  factual dispute.  It might be a modest one, but there might be

11  some factual dispute that might turn this more into 3553

12  testimony as opposed to just a victim impact statement.

13      But let me just make sure, though, you do want to

14  promote -- to proceed by remote means?

15      MR. PARENTE:  Right, Judge.  The -- and this is

16  primarily for two.  Most of the victims have written

17  statements that I'll either read to the Court or submit in

18  advance depending on timing and some other things.  Two of the

19  victims do want to be heard by your Honor.

20      They do unfortunately fear Ms. Malinek, and they

21  think that the trauma of even seeing her in person again will

22  trigger additional psychological harm, and so they've asked to

23  be able to participate through a video feed where you'll be

24  able to possibly see them, Judge, at least hear them and

25  they'll be here in the office building with us, but they don't

1  want their names used, and they don't want to have to see the

2  defendant again.  And again, I think that's consistent with

3  the defendant's agreement to pay restitution for counseling

4  for these individuals which they're going to need based on

5  what happened to them in this crime.

6          So for the reasons that -- for the same reason that I

7  can read a letter to them -- to your Honor from them, I don't

8  understand what prejudice the defendant has by allowing these

9  people to participate from a remote location and not in

10  person.

11          THE COURT:  Right.  I mean, I understand there's no

12  Sixth Amendment confrontation right, and so even reliable

13  hearsay is permitted in the form of written statements or

14  here, testimony by remote means.  So, I mean, I don't have a

15  problem in principle although I'll, of course, let Mr. Rascia

16  address this too.

17          But I think you mentioned, though, the wrinkle that I

18  had not been aware of is that they don't want their -- so they

19  don't want their names used.  You're willing to disclose,

20  though, to the defense counsel who they are?

21          MR. PARENTE:  Of course, your Honor.  Your Honor and

22  the defense counsel will know who they are.  Just because it

23  is a public proceeding, and again, there's been threats to

24  family members back in Guatemala, so we're just trying to

25  protect the privacy as they're entitled to under 3771 as much

1  as we can.  But obviously, the defense counsel and your Honor

2  will be told who these people are.

3        We would just ask that when we're referring to them,

4  we use the numbers in the indictment which I will give your

5  Honor and defense counsel.

6        THE COURT:  Okay.  So, Mr. Rascia, what's your

7  position?

8        MR. RASCIA:  Judge, after I spoke with Mr. Parente

9  and he let me know that the witnesses he intended to present

10  were essentially going to be giving victim impact statements,

11  I don't have an objection to them doing that remotely.  You

12  know, if he wants to proceed that way, that's his choice,

13  though I don't have a particular problem with that.  I have

14  discussed that with my client.

15        THE COURT:  Okay.  Yes.  Well, I mean, I think even

16  if the statement starts to border on a potential factual

17  dispute, even there, there is no Sixth Amendment confrontation

18  right.  So I think I would just, of course, have to weigh the

19  reliability of the statements.  And I think they could easily

20  do that over a video feed and indeed, even do that with a

21  written statement.

22        So I think the victims ought to be able to testify by

23  remote means, as I said, even if it strays into something that

24  is more akin to a factual dispute.

25        Do you have any problem with the victim anonymity in

1  terms of in court?  Mr. Parente obviously will disclose to you

2  who they are.

3          MR. RASCIA:  Judge, I don't.  As long as my -- I have

4  the information and my client has the information, I'm fine

5  with that.  They don't need to disclose it on the record.

6          THE COURT:  Okay.  And then let me ask, while we have

7  you anyway, Mr. Rascia, you're still planning on calling these

8  six witnesses in person, or are they going to testify by

9  remote means?

10          MR. RASCIA:  Well, Judge, there's a little bit of a

11  problem with doing it remotely for some of these people.

12  Number one, I'd have to bring them all into my office because

13  they don't have the ability or the equipment to participate

14  remotely other than if they're in my office.

15          The second problem that creates is, the only room in

16  our suite that's big enough to accommodate people safely is

17  the conference room.  And I learned last week while trying to

18  do a remote proceeding, the internet connection keeps getting

19  interrupted in the conference room for reasons I'm not quite

20  sure of.  In my individual office that's never a problem, but

21  there's just not enough room.

22          So I'd prefer to present these witnesses live in

23  court, although we do have an IT person coming out, supposed

24  to be here on Wednesday to try to solve the problem with the

25  conference room.  All of these witnesses except Mary Berrera

1 and Jeffrey Malinek require a Spanish language interpreter.

2 THE COURT: Okay. Yes, I don't have an objection to

3 having them presented in court. I do appreciate that you've

4 taken some steps to try to avoid that, but I don't have a

5 problem with that because Ms. Malinek is -- so she, of course,

6 is entitled to be there in person. And she still wants to be

7 there in person, correct, Mr. Rascia?

8 MR. RASCIA: She does, Judge. I've had multiple

9 conversations with her on that subject, but she prefers to be

10 live in court with you.

11 THE COURT: Okay. That's --

12 MR. RASCIA: Either way, I'm going to have to be

13 there, so...

14 THE COURT: Right. Yes, and that's fine. It is her

15 right. And with regard to your witnesses, I would just refer

16 you again to the standing order on the precautions that we're

17 going to take. And the one thing I do want to ask you about

18 there is, and I don't think the government would object, but I

19 should confirm that for -- in the standing order which is

20 designed mostly for jury trials, I have the -- but it does

21 apply to bench proceedings. Typically, the witnesses take

22 their masks off and that way, of course, is to allow the jury

23 to assess credibility.

24 Do you have an objection to presenting your witnesses

25 with their masks on?

1    MR. RASCIA:  Judge, I don't as long as the

2 interpreter is able to hear the witness appropriately and

3 accurately translate back.  I think as long as the equipment

4 is able to pick up what they're saying adequately, I'm not

5 concerned about the oral presentation of the interpreter.

6    THE COURT:  Okay.  We'll work offline with the

7 courtroom deputy and the interpreter's office on exactly how

8 to format this.  And we'll also bring Systems into it because

9 the video component of the victim statements is going to

10 require some additional, I think, installation or a cart that

11 we might have to bring in so that everyone can see what's

12 happening.

13    And, Mr. Parente, you need interpreters for the

14 victims; is that correct?

15    MR. PARENTE:  Yes, your Honor.

16    THE COURT:  Okay.  So that will be another wrinkle

17 that we'll have to work off.  And again, we can do that

18 offline.  I just want to make sure that we have the basics

19 down for this hearing.

20    So okay.  Then the bottom line then is that the

21 victims may testify by remote means even if it becomes

22 something of a factual dispute with the defense witnesses.

23 And that's again because there is no Sixth Amendment

24 confrontation right.  I will assess the statements for

25 reliability, of course, as I must but otherwise, the

10

1  government can proceed in that way.

2          And, Mr. Rascia, just let us know maybe on -- let's

3  see.  This is on the 17th.  So if you can let us know by

4  Friday if you solve the remote witness issue.  And if you

5  haven't, again, there or -- or even if you did, you can

6  present them in court.  Just make sure to go over all the

7  safety precautions with them.

8          MR. RASCIA:  I will.

9          THE COURT:  All right.  Okay.  Is there anything else

10  we need to address today, Mr. Parente?

11          MR. PARENTE:  Just to keep the Court apprised of

12  timing on the government's side, so as of now, I anticipate

13  these two victims speaking remotely.  And again, I wouldn't

14  think that's going to be much longer than ten minutes total.

15  We do believe it will be one victim who will appear in person.

16  And again, I don't anticipate that to be lengthy.

17          And then there will be multiple written statements

18  that if the Court would allow, I'd like to read to your Honor

19  on behalf of the victims who do fear appearing in person.  But

20  again, from the ones that I've seen so far, they're pretty

21  short letters, maybe two, three pages max.  But the victims

22  will be listening into the hearing.  And so I would, with the

23  Court's permission, appreciate the opportunity to read their

24  words to your Honor.

25          THE COURT:  All right.  Well, I think it would be

1    reasonable to have some heads-up to the defense on the -- it's

2    just like they would get written victim impact statements I

3    think ideally.

4           What are you telling the victims in terms of when is

5    the last day they can get this to you?

6           MR. PARENTE:  I've told them to get them to me as

7    soon as possible, Judge.  And I'm assuming I'm going to get

8    them on a rolling basis.  And what I'll do is I'll just send

9    those to Mr. Rascia as soon as I receive them as well.

10          THE COURT:  Okay.  And yes, you should cc. the

11   courtroom deputy as well.

12          MR. PARENTE:  Okay.  I will do that.

13          THE COURT:  All right.  And then, yes, I had not

14   known that you -- so you wanted to present a victim in person.

15   Just again, make sure you go over the same safety precautions

16   that I posted to the website.  And do you have any -- do you

17   have an objection to that person remaining masked?

18          MR. PARENTE:  No, your Honor.  I don't have an

19   objection to Mr. Rascia's witnesses being masked or unmasked,

20   whatever his preference is.

21          THE COURT:  Okay.  Yes, but I'm saying, you don't

22   have an objection to presenting your in-person victim with a

23   mask on?

24          MR. PARENTE:  No, your Honor.

25          THE COURT:  And, Mr. Rascia, do you have any problem

12

1  with that?

2          MR. RASCIA:  No, your Honor.

3          THE COURT:  Okay.  All right.  We'll obviously have

4  some offline conversations to just make sure the logistics

5  work out, but I think we've got the plan in place.

6          Mr. Rascia, anything else?

7          MR. RASCIA:  Judge, no.  We're good to go.

8          The one issue that I have talked about with

9  Mr. Parente which I know is a concern to him is the

10  restitution and the ability to pay the restitution.  There is

11  a process that's ongoing to obtain funds through the

12  refinancing of the home.  The loan has not been funded yet,

13  but it is in process, and all the necessary paperwork has been

14  submitted.  So hopefully, that will be finalized before the

15  17th.

16          THE COURT:  All right.  Is that a -- is there a

17  dispute over the amount, or are you just talking about sources

18  of funds?

19          MR. RASCIA:  I think we're really close on the

20  amount.  Prior to the change of plea, Mr. Parente sent me

21  preliminary figures.  I don't think there's going to be much

22  of a change in that.  So we're prepared to move forward based

23  on the figures that Mr. Parente had previously provided.  And

24  now the loan is in process to make those funds available.

25          THE COURT:  All right.  There is a provision in the

1  restitution statute that allows us another 90 days if we need

2  to narrow down any lingering disputes.  But yes, if we can get

3  it done on the 17th date, that would be ideal, but we do have

4  that little bit of leeway.

5          MR. RASCIA:  Judge, I'm hopeful that will be ready on

6  the 17th.  If it's not the 17th, I would expect it would be

7  very shortly thereafter.

8          THE COURT:  All right.

9          MR. RASCIA:  Meaning the funding of the loan.

10          THE COURT:  All right.  Okay.  Ms. Maitland, did you

11  want to say anything?

12          MS. MAITLAND:  No.  Thank you, your Honor.

13          THE COURT:  All right.  Okay.  Well, then this

14  hearing is concluded.  And again, we'll be in touch about

15  nailing down the logistics.  Thank you.  We're adjourned.

16          MR. PARENTE:  Thank you.

17          MR. RASCIA:  Thank you.

18      (Proceedings adjourned at 10:18 a.m.)

19

20

21

22

23

24

25

1    C E R T I F I C A T E

2         I, Judith A. Walsh, do hereby certify that the

3    foregoing is a complete, true, and accurate transcript of the

4    telephonic proceedings had in the above-entitled case before

5    the Honorable EDMOND E. CHANG, one of the judges of said

6    court, at Chicago, Illinois, on February 8, 2021.

7

8    /s/ *Judith A. Walsh, CSR, RDR, F/CRR*_____          July 12, 2021

9    Official Court Reporter

10   United States District Court

11   Northern District of Illinois

12   Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25